IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff/Respondent,                              No. 1:16-cv-01204-PJK-KRS
                                                                             No. 1:12-cr-00966-PJK

v.

RAYVELL VANN,

       Defendant/Movant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Rayvell Vann, an inmate presently incarcerated at Leavenworth, seeks review of his sentence pursuant to 28 U.S.C. § 2255. In his *pro se* motion, Vann asserts his attorneys rendered constitutionally ineffective assistance because they (1) failed to call certain witnesses at trial who would have "cast doubt" on his possession of drugs; (2) did not challenge the validity of incriminating statements he made post arrest; and (3) prevented him from testifying on his own behalf at trial. Acting under an order of reference from United States Circuit Judge Paul J. Kelly, Jr. to conduct proceedings, *see* 28 U.S.C. § 636, the Court has considered the parties' submissions together with the record and **RECOMMENDS** Vann's motion be **DENIED** and this matter be **DISMISSED WITH PREJUDICE**.

### I. BACKGROUND

#### A. Facts

In early April 2012, Vann flew from Omaha, Nebraska, where he lived, to Los Angeles, California to negotiate the purchase of marijuana and PCP. [Doc. 266, pp. 153-54].[1] After

---

[1] The docket numbers ("Doc.") cited herein refer to the criminal docket unless denominated as "CV Doc." In the District of New Mexico, pleadings and other papers submitted in Section 2255 cases commenced before January 1, 2017, are filed in the underlying criminal case and a separately opened civil matter created upon the filing of the

staying in Los Angeles for about five days, Vann bought a one-way ticket to Kansas City, Missouri aboard Amtrak's Southwest Chief about two hours before its scheduled departure time. [*Id.*, pp. 103; 153-54]. This short window and the fact Vann paid cash, both of which suggest to law enforcement agents a possible drug transport, caught the attention of a confidential informant within the Drug Enforcement Agency. [*Id.*, pp. 103-104]. The informant alerted DEA Special Agent Kevin Small, an Albuquerque-based interdiction specialist, that Vann, among other suspects, would be aboard the Southwest Chief on April 9, 2012. [*Id*, pp. 102-103].

Because trains in the United States do not screen luggage, trains are prime targets for smugglers to use in transportation, and interdiction agents utilize "consensual encounters" as a tool for combatting the West-East movement of drugs across the nation. [*Id*, pp. 95-96]. A "consensual encounter" in the drug-interdiction world is a voluntary or consensual conversation with a suspect to gather information as to whether the person is transporting narcotics. [*Id.*, pp. 95-96]. As the name implies, the suspect is under no obligation to answer questions, and participates in the conversation with the agent voluntarily. [*Id.*].

Knowing the train would make a scheduled stop in Albuquerque between 10:30 and 11:00 a.m., Agent Small prepared to board the train and conduct a consensual encounter with Vann. [*Id.*, pp. 114-121]. Agent Small was accompanied by two partners from local law enforcement agencies, Task Force Officers Danny Joseph and Jeannette Tate. [*Id.*, pp. 115]. After boarding the Southwest Chief, Agent Small found Vann in car 412 sitting in a window seat. [*Id.*, p. 118]. Vann agreed to talk to Agent Small and allowed Agent Small to search Vann's luggage, a laptop case and small duffle bag. [*Id.*, pp. 128-29]. Inside the duffle bag was a large, pink gift box that spanned the entire length of the bag, along with what appeared to be

---

motion challenging the sentence. The two electronic dockets, while similar, are not identical. For that reason, the Court uniformly cites to the criminal docket except when a submission is only available among the civil filings.

clothing for a small baby or child's doll. [*Id.* pp. 128-30]. On the exterior of the box was a crude, handwritten inscription to "Aunt Bertha from the Washington Family." [Doc. 238-2]. Agent Small immediately suspected the box contained controlled substances and asked Vann to accompany him to the lower level of the train car. [Doc. 266, pp. 129-30].

Once there, Vann initially denied that there were narcotics in the box. [Doc. 281-1, p. 15]. However, when Agent Small pressed Vann on the details of Bertha Carter, the box's addressee, Vann immediately asked to make a deal with the agent. [*Id.*, p. 16]. Vann confessed that the gift box contained "a bottle and a half" of codeine cough syrup and "some [OxyContin] pills." [*Id.* p. 17]. Nonetheless, Vann refused Agent Small's request to open and search the gift box. [*Id.*, p. 20]. Agent Small informed Vann that he would be cuffed, escorted off the train, and taken to the DEA office where Agent Small would prepare a search warrant. [*Id.*, p. 21].

Agent Small obtained a warrant. Upon cutting into the gift box, Agent Small smelt ether, which he knew to be indicative of PCP. [Doc. 266, pp. 133-35]. Ultimately, Agent Small extracted two bottles of cough syrup containing codeine, two juice jars containing over 100 grams of PCP, and 25 OxyContin pills. [*Id.*, pp. 138; 147]. Because PCP is dangerous, Agent Small enlisted the help of Agent Jeff Mauldin, who is specially trained in handling hazardous drugs, to take samples of the PCP for analysis at the DEA lab in Dallas, Texas. [*Id.*, pp. 142; 144]. A private company later disposed of the remainder of the PCP not used for samples because of the substance's volatility.

After Agent Small retrieved the items from the box, he and Officer Tate interviewed Vann. [*Id.*, p. 152-53]. Agent Small first informed Vann he was under arrest for the PCP and codeine cough syrup. [*Id.*]. Vann waived his *Miranda* rights and admitted he had gone to Los Angeles to purchase a gallon of PCP and twenty pounds of marijuana, which he did and which

he said he shipped to Omaha via UPS. [*Id.*, p. 153-54]. Vann claimed to be unaware that PCP was in the gift box. [*Id.*, p. 153]. Vann further explained he planned to sell the drugs: he bought the full bottle of the cough syrup for $120, the less full bottle for $80, and planned to sell the full bottle for $250. [*Id.*, pp. 153-55]. Vann expected to receive $1,400 per pound for the marijuana on the street and said an eight-ounce bottle of PCP would fetch $1200. [*Id.*]. Because the marijuana had been fronted to him, Vann clarified, he had to pay $600 per pound, substantially more than the $400 cash price had negotiated in February of 2012 in Los Angeles. [*Id.*]. As for the OxyContin, Vann related he purchased the pills for $10 each and would sell them in Omaha for $50 apiece. [*Id.*].

### B. Procedural Posture

On October 10, 2012, a grand jury returned a two-count second superseding indictment charging Vann with possession with intent to distribute 100 grams and more of a controlled substance containing phencyclidine (PCP) contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2 (Count 1); and possession with the intent to distribute a controlled substance containing codeine, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(E)(3) and 18 U.S.C. § 2 (Count 2). [Doc. 64]. Vann pleaded not guilty [Doc. 72].

After a two-day jury trial on March 12 and 13, 2013, a jury convicted Vann on both counts. [Docs. 179; 182; 183]. Judge Kelly sentenced Vann, who represented himself at the October 1 and 18, 2013 sentencing hearings with his trial attorneys as standby counsel, to 180 months incarceration followed by a term of eight years supervised release on Count I and twelve months incarceration along with a year of supervised release on Count II, to run concurrently. [Doc. 227].

Vann appealed his conviction and sentence on November 1, 2013. [Doc. 231]. The Tenth Circuit affirmed in a published opinion. *See United States v. Vann*, 776 F.3d 746 (10th Cir. 2015). The Court of Appeals rejected Vann's claim that he was denied a fair trial when, notwithstanding *Batson v. Kentucky*, 476 U.S. 79 (1986), the District Court allowed the Government to use a preemptory strike to excuse the only African-American in the venire panel. *See Vann*, 776 F.3d. at 757. The court also determined that the Agent Small's experience in interdiction qualified him to testify reliably as an expert. *See id.* at 758. Further, under a plain error review, the Court of Appeals found that the prosecution's statements during closing were sufficiently grounded in the record such that any discrepancy between the evidence actually adduced and argument did not amount to misconduct. *See id.* at 762. Finally, the Court of Appeals concluded that Vann validly waived his right to counsel during sentencing. *See id.* at 763.

The Tenth Circuit issued its mandate on April 2, 2015. [Doc. 274]. Vann's conviction and sentence became final on November 2, 2015, when the Supreme Court denied Vann's petition for certiorari. [*See* Docs. 274-75]. Vann timely filed the instant motion on October 31, 2016 collaterally attacking his 180-month sentence pursuant to section 2255. [Doc. 277]. The Government responded on April 19, 2017. [Doc. 281]. Vann did not submit a reply.

## II. STANDARD OF REVIEW

Section 2255 authorizes a federal prisoner to move the court that sentenced him to "vacate, set aside or correct the sentence" on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). In

reviewing a motion under Section 2255, the Court presumes that the proceedings leading to defendant's conviction were correct. *See Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989). To prevail, defendant must show a defect in the proceedings that resulted in a "complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

### III. ANALYSIS

Vann articulates three separate reasons why the Court should set aside his sentence on the basis of ineffective assistance of counsel: counsel (1) failed to call Dr. Eugenia Brazwell, Mike Lepic, and Richard Baca as witnesses; (2) did not vigorously cross examine Agent Small on Vann's unrecorded post-arrest interview during which Vann admitted to sending PCP and marijuana to Omaha via UPS; and (3) prevented Vann from testifying at trial. To prevail, Vann must satisfy the twin burden of establishing that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Prejudice" in this context requires Vann to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Court must presume "[s]trategic or tactical decisions on the part of counsel are . . . correct, unless they were completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy." *Moore v. Marr*, 254 F.3d 1235, 1239 (10th Cir. 2001) (quotation and citation omitted).

#### A. <u>Failure to Call Witnesses</u>

According to Vann, Dr. Brazwell, the director of toxicology at TriCore Laboratories in Albuquerque, would have cast doubt on whether the substance Agent Small recovered from the gift box was, in fact, PCP. Lepic, Vann claims, witnessed a conversation between Vann and Dr.

Brazwell that Vann believes should have been placed into evidence through the testimony of Lepic.  Finally, Baca, a private investigator Vann's attorneys hired, learned the DEA previously had disciplined Agent Small.  Vann says Baca would have told the jury of Agent Small's workplace malfeasance and about the proper handling and disposal of PCP.  It is undisputed that these individuals did not testify.

"[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney."  *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008).  Matters of strategy and tactics are significant in ineffective assistance claims because counsel's decisions in those areas "are presumed correct, unless they were completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy."  *Moore*, 254 F.3d at 1239.  After all, "[u]nlike a later reviewing court, the attorney observed the relevant proceedings [and] knew of materials outside the record."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  In terms of a witness the inmate claims would have cast doubt, as the Tenth Circuit has explained, just as easily "as one can speculate about favorable testimony, one can also speculate about unfavorable testimony."  *Boyle*, 544 F.3d at 1139 (citing *United States v. Snyder* 787 F.2d 1429, 1432 (10th Cir. 1986)).  Thus, the Court may not presume a witness's testimony would have been beneficial; the plaintiff must establish what the witness would actually say.  *See Snow v. Sirmon*s, 474 F.3d 693, 730 (10th Cir. 2007).

### 1. *Mike Lepic and Richard Baca*

Vann's claims as to Lepic and Baca are easily resolved.  Vann does not identify what Lepic would actually have actually testified to at trial.  The Court therefore is unable to meaningfully address either prong of *Strickland*.  Even had Vann crossed this initial threshold, the Court cannot say trial counsel's decision fell outside the "wide latitude" the law affords them.

*See Moore*, 153 F.3d at 1121. Vann's proposed testimony from Lepic about a conversation Vann says he had with Dr. Brazwell—the substance of which is unknown and Vann contends Lepic witnessed—would have been inadmissible hearsay. *See* Fed. R. Evid. 801(c).[2] The Court certainly cannot fault a lawyer for adhering to the evidentiary rules by not attempting to offer inadmissible hearsay evidence.

Although Vann makes an offer of proof for Baca, it is unclear how Baca could testify to a 2002 disciplinary incident involving Agent Small. Certainly, Agent Small's propensity for falsifying evidence, which is what Vann says the disciplinary action shows, is troubling and should feature in a sound defense. Baca, however, had no personal knowledge of the matter and presumably would relate the statements of others to the jury, which statements would have been inadmissible hearsay. More significantly, Vann cannot overcome Judge Kelly's pretrial ruling prohibiting Vann "from cross-examining DEA Special Agent Small about his 2002 suspension." [Doc. 109]. While it is true that Vann did not respond to the Government's motion *in limine*, Vann does not argue infective assistance on that ground. Moreover, Judge Kelly did not rely on the failure to respond as the basis for granting the motion, but instead conducted the required balancing test under Federal Rule of Evidence 403 to determine the inadmissibility of the proffered testimony. Thus, offering Baca's testimony to collaterally attack Agent Small's credibility, even if admissible, would have violated Judge Kelly's order. The fact that trial counsel obeyed a court order is not grounds for relief based upon ineffective assistance.

To the extent Vann suggests Baca would have educated the jury on proper disposal techniques of PCP, the Court is not convinced trial counsel's performance was deficient. As the Government points out, there is no evidence in the record that Baca had the type of expertise

---

[2] To the extent Vann would have used Lepic's testimony to impeach another witness at trial with specific instances of the witness's conduct in an effort attack the witness's character for truthfulness, Lepic's testimony would have been inadmissible. *See* Fed. R. Evid. 608.

necessary to give such testimony. It does not appear Baca was ever named or disclosed as an expert. Thus, it is possible, or even probable, that Baca would not have been permitted to testify as an expert concerning the proper disposal of PCP. *See* Fed. R. Crim. P. 16(b)(1).

Regardless, Judge Kelly determined disposal was "largely irrelevant to the issues at trial" when denying Vann's subpoena requests to SET Environmental, Inc., a private contractor the DEA hired to dispose of the remaining PCP not used as a sample in this case. [Doc. 141]. It was therefore entirely appropriate trial strategy for Vann's attorney to not call Baca to testify about PCP disposal. Finally, the Court cannot discern any prejudice to Vann based upon Baca not testifying as a witness. Dwelling on disposal techniques for PCP would underscore that the substance possessed by Vann actually was PCP, it was highly dangerous, it came from the gift box Vann had, and it contained over 100 grams of the substance. All of those foregoing facts would have served to bolster Vann's guilt for the crime with which he was convicted. Because Vann has not met either prong of *Strickland*, he is not entitled to relief under Section 2255.

### 2. *Dr. Brazwell*

In a letter to the DEA laboratory in Dallas, Dr. Brazwell wrote:

> I have been asked to verify the presence of and assess the percent of . . . (PCP) present in a liquid drug mixture. One aliquot of the PCP drug mixture was removed for the purpose of determining the purity by GC/MS analysis. The analysis was performed and the result was used in the purity calculation.
> . . .
> The liquid chemical mixtures were delivered to the laboratory by DEA Special Agent, Kevin Small. The two aliquots were brought up in urine and extracted according to our SOP for the analysis and quantification of PCP. . . . The specimens were processed along with patients and donors that had screened positive for the presence of PCP. . . . The remaining urine was poured down the drain after the completion of the analysis and a written report was generated stating the findings[.]

[Doc. 281-6].

The significance of the letter is not lost on the Court: there was *no* mention at trial of the sample being in urine at all. Of course, while the Government need not prove that Vann knew PCP was in the gift box, only that *a* controlled substance was in the gift box, the Government did have to prove that 100 or more grams of PCP was recovered from the box. *See* 21 U.S.C. § 841(a)(1). Taking the correspondence at face value could suggest that the samples Agent Small collected had been contaminated or were not the same samples the DEA tested, and, inferentially cast doubt on whether and how much of the liquid the DEA recovered was PCP.

The Tenth Circuit, however, has cautioned against this type of guesswork. *See Snyder*, 787 F.2d at 1432. The Court does not have the same extra-record knowledge as Vann's trial attorneys did. This missing information is significant because there are at least two competing, and perhaps more plausible, inferences that might be drawn from Dr. Brazwell's correspondence—either that DEA agents or TriCore mixed up the samples, or more likely, that Dr. Brazwell erroneously imported the text from a different case into her report. After all, TriCore is not a forensic facility; it is a medically-oriented business and specimen repository. *See* http://www.tricore.org/about (last visited Aug. 29, 2017). The Court does not doubt that TriCore has technical ability to test PCP, only that Dr. Brazwell could have made a scrivener's error in her letter based on the more typical case she confronts. The actual report prepared by TriCore in connection with the substance test could have either supported or dispelled Vann's contention, depending upon the consistency of its contents in relation to Dr. Brazwell's correspondence. Curiously, Vann does not submit the actual report referenced in the correspondence. Nor does Vann explain his premise sufficiently to demonstrate that TriCore's mistake would have affected the outcome of his case.

*United States v. Vann*
*Proposed Findings & Recommended Disposition*
Page **10** of **17**

Presenting Dr. Brazwell's testimony could well have been catastrophic to Vann. The Government could paint the independent testing as a technical "hail mary" that ultimately backfired on Vann, solidifying his guilt. Critically, Dr. Brazwell confirmed the test was positive for PCP. The Court is required to presume that the decision not to call Dr. Brazwell was strategically sound, and one of the many ways different attorneys might choose to provide effective assistance to a criminal defendant. *See Moore*, 254 F.3d at 1239. Ultimately, giving all deference to Vann, the following are likely scenarios: either the DEA made a mistake with the sample, TriCore made a mistake with the sample, or Dr. Brazwell cut and pasted inapplicable text into her correspondence. Vann does not explain why one scenario is more likely than the other, or how his attorneys' decision to not address or attack the issue was something beyond merely wrong and instead was "completely unreasonable." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (citation omitted). On the record before it, the Court cannot determine that the performance of Vann's counsel was constitutionally deficient concerning the issue of Dr. Brazwell's testimony under the first prong of *Strickland*.

Even assuming Dr. Brazwell would have testified that the samples were in urine, it is unclear that these statements would have swayed the jury, which Vann must establish to succeed under *Strickland*'s second prong. Three witnesses testified as to the extracting and testing of the PCP: Agent Small, Agent Mauldin, and Chemist Cornell Wilson. The testimony established that after obtaining a search warrant, Agent Small extracted two, 250 milliliter glass juice containers from the gift box. [Doc. 266., p. 138]. Upon opening the box, Agent Small smelt ether, indicative of PCP. [*Id.*, p. 134]. Because PCP is toxic, hazardous, and cannot be sent through the mail in large quantities, Agent Small enlisted the assistance of Agent Mauldin, who

is trained handling "clandestine" materials, to take samples for shipment to the DEA lab in Dallas. [*Id.*, p. 156].

Agent Mauldin took a "representative sample" from each juice container, placed each sample in a separate glass tube, and packaged the glass tubes into plastic containers for added protection. [*Id.*, pp. 149-51]. Agent Small mailed the evidence to Dallas in a box containing a standard-issue DEA evidence bag. [*Id.*, pp. 160-61]. Chemist Cornell Wilson received the bag with the samples and opened it from the other end, leaving undisturbed Agent Small's seal. [*Id.*, pp. 202-203]. Gas chromatography and mass spectrometry confirmed the substance was PCP, and Wilson determined that the bottles from which the samples had been extracted weighed 423.5 grams. [*Id.*, pp. 204-213].

While the PCP was at the lab, Vann requested independent testing. As a result, the lab took a sample and placed it in a new container. [*Id.*, p. 269]. The lab returned the evidence to Agent Small. [*Id.*]. The seal where Agent Small had signed had not been breached, and there were two signed seals from the lab, accounting for when Wilson had taken the PCP vials out for analysis and later when some of the sample was placed into a third container for independent testing. [*Id.*, pp. 164; 190]. Once back with Agent Small, Agent Small delivered the third container to TriCore. [*Id.*, p. 165]. TriCore tested the PCP and sent it back. [*Id.*, p. 168].

At trial, Judge Kelly overruled Vann's foundational objection directed at the chain of custody. Moreover, Vann's attorneys effectively cross examined on the manner in which the samples were gathered and sealed in the evidence bag. [*Id.*, pp. 192 -96]. Vann's counsel handily extracted concessions that the samples were never marked as to which juice bottle they came from, the PCP was never weighed, and the substance ultimately was disposed of. [*Id.*]. Significantly, Wilson admitted that, in arriving at the weight of the PCP, he assumed the juice

bottles were correctly labeled as containing 250 milliliters and that the containers were 100 percent full. [*Id.*, p. 216]. Nor did Wilson account for how ether expands. [*Id.*, p. 217].

The point is that the jury heard the consistent testimony of the Government's witnesses about how the PCPs samples were handled, namely in liquid form in a sealed evidence bag for which each step in the chain of custody was accounted. The only curious aspect was Vann's request for independent testing that caused an additional seal. On cross examination, the jury heard that the process was not without weakness. However, the jury must have determined any imperfections in the evidence collection, preservation, and testing process did not overcome the countervailing strength of the Government's case. Thus, one may not conclude that even had Dr. Brazwell testified the PCP samples "were brought up in urine," the jury would have taken it to mean the DEA and TriCore samples were not the same *and* used the difference as a basis to acquit Vann.

In other words, the jury remained free to believe the Government's witnesses, especially the testimony that *after* Agent Small received the sample back from TriCore, the sample was sent to Dallas so the DEA lab could confirm it was the same compound that had been sent out. [*Id.*, p. 165]. Mere speculation by Vann does not satisfy *Strickland*'s prejudice prong: "[t]he likelihood of a different result must be substantial, not just conceivable." 466 U.S. at 693. Here, Vann has not demonstrated that there is a substantial likelihood of a different result had the witnesses he identifies testified, and the Court recommends his motion be denied.

### B. Failure to Cross Examine

Agent Small testified that Vann made a number of inculpating statements after his arrest. Agent Small testified that Vann told him during the interview that while in Los Angeles, Vann negotiated the purchase of 20 pounds of marijuana for $600 per pound and a gallon of PCP for

which Vann paid $10,000. Vann mailed these items in a box by UPS to Omaha where he planned to sell them. Vann asserts that his attorneys were ineffective for failing to point out during Agent Small's cross examination that this "alleged confession" was not recorded, "the only offer of proof was Agent Small's testimony," and only mentioning the confession once. Vann also claims the mailed drugs increased his sentence in violation of *United States v. Alleyne*, __ U.S.__, __, 133 S. Ct. 2151 (2013). The Court disagrees.

The issue of the *post*-arrest incriminating statements was the subject of a motion to suppress and an hour-and-twenty four-minute evidentiary hearing. [Doc. 175]. Vann's counsel argued that *Miranda* warnings given were insufficient and the confession was not extracted within six hours in violation of the "prompt presentment Rule." [Doc. 152]. Judge Kelly denied the motion in written findings of fact and conclusions of law, determining the statements were admissible. [Doc. 174]. At trial, Agent Small was not the only "offer of proof," as Vann represents. Officer Tate, Agent Small's investigative partner, witnessed the post-arrest exchange with Vann and testified consistently with Agent Small—that Vann stated during the interview he had purchased or was fronted marijuana and PCP, which he sent by UPS. [Doc. 266, pp. 243-45].

It appears to the Court that Vann made his best argument in motion practice to exclude these damaging admissions at trial. The motion was unsuccessful. Of course, Vann's attorneys could have pointed out on cross examination that the interview was not recorded, but certainly that was not the only way to defend Vann and does not strike the Court as deficient under *Strickland*'s first prong. Instead, Vann's lawyers focused their energy on the more obvious strategy of challenging the amount of the PCP recovered from the box and Vann's surprise as to what was in the box. Vann's counsel may not have wanted to draw additional attention to his

history of drug trafficking.  It is, therefore, pure speculation to imagine how Vann would have succeeded at trial with prolonged cross examination concerning whether his interview by Agent Small was recorded.

To the extent Vann's consternation is the enhanced sentence he received, Vann represented himself during those proceedings and cannot now complain of ineffective assistance. *See McKaskle v. Wiggins*, 465 U.S. 168, 177, n. 8 (1984) (explaining that "a defendant who exercises his right appear pro se cannot thereafter complain that the quality of his own defense amount to a denial of effective assistance of counsel").  If what Vann means is that the trial testimony he believes his attorney should have challenged on cross examination served as the basis for an enhanced sentence, Judge Kelly was free to consider the evidence of the drugs for which Vann was not charged as part of Vann's background.  As the Government points out: "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661.

Vann's final contention that under *United States v. Alleyne*, a jury had to find beyond a reasonable doubt that he mailed the PCP and marijuana for the Court to enhance his sentence is waived.  Vann was required to raise the issue in his direct appeal, which he did not do.  *See United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996) ("When a defendant fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered"). Vann's challenge is therefore procedurally defaulted, and Vann does not make any showing that an exception would allow him to raise the issue for the first time in these proceedings.

### C. Prevention of Testimony

Vann insists his lawyers prevented him from testifying in his own defense at trial. If true, Vann's attorneys' performance was constitutionally deficient. "A criminal defendant has a constitutional right to testify in his own behalf at trial." *Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004) (citation omitted). Although a lawyer "should . . . discuss with the defendant the strategic implications of choosing whether to testify, and should make a recommendation to the defendant," the choice "to testify lies squarely with the defendant." Thus, "[i]f counsel were to deprive the defendant of his right to testify in his own defense, counsel's performance would be deficient under the first prong of *Strickland*." *United States v. Stiger*, 2009 U.S. Dist. LEXIS 108512, *17 (N.D. Okla. Nov. 19, 2009).

Typically, the Court must hold an evidentiary hearing to resolve factual disputes. *See Cannon v. Mullin*, 383 F.3d 1152, 1172 (10th Cir. 2004). Here, it is not clear from the record whether Vann waived his right to testify or was, as Vann contends, prevented from testifying by his attorneys. The Court need not hold a hearing, however, because it is incumbent upon Vann to show prejudice under *Strickland*'s second prong. *See id.* As above, Vann must at least identify what his testimony would have been so the Court can analyze whether there was a likelihood of a different outcome at trial. *See United States v. Bailey*, 245 Fed. Appx. 768, 771 (10th Cir. 2007) (explaining that "Mr. Bailey cannot establish prejudice" and "[i]n the district court, he gave no suggestion of the content of his testimony or how it would have affected the jury's consideration of the evidence").

In his motion, Vann says he "repeatedly articulated his intention to testify on his own behalf and his attorneys still chose not to call him as a witness at trial." Vann also points out that "there is no waiver of testifying on the record." These statements do not show what Vann's

testimony would have been or how his testimony would have affected the jury's determination of guilt. Vann therefore cannot establish prejudice. Moreover, the lack of a formal waiver after a trial-court inquiry does not necessarily help Vann. As the Tenth Circuit has explained, the district court "has no duty to explain to the defendant . . . he has a right to testify or to verify that a defendant who is not testifying has waived the right." *United States v. Williams*, 139 Fed. Appx. 974, 976 (10th Cir. 2005). In fact, "a defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand." *Id.* (citation omitted). Otherwise, "waiver of the right to testify may be inferred from the defendant's conduct." *Id.*

Vann did not meet his burden to show prejudice due to the fact he did not testify at trial, and the Court recommends that his motion to vacate his sentence be denied.

## CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Vann's motion for relief under 28 U.S.C. § 2255 [Doc. 277; CV Doc. 2] be **DENIED** and this matter **DISMISSED WITH PREJUDICE**.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

**WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**